# EXHIBIT A

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-37484A7AC49D

 

## MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1

1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2  Buyer Name(s) *[please print]* Lilian Riedy

3  Seller Name(s) *[please print]* _____

4  If Dual Agency Applies, Complete Optional Paragraph 31.

5  **2. THE REAL ESTATE:** Real Estate shall be defined as the property, all improvements, the fixtures and Personal
6  Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate
7  with approximate lot size or acreage of 49 X 154 _____ commonly known as:
8  1207 Lisle PL LISLE IL 60532
9  Address                                          City              State         Zip
10  DuPage                                                        0810221003
11  County                        Unit # (If applicable)        Permanent Index Number(s) of Real Estate
12  If Condo/Coop/Townhome Parking is Included: # of spaces(s) _____; identified as Space(s) # _____;
13  *[check type]* ☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

14  **3. PURCHASE PRICE:** The Purchase Price shall be $ 240,000 _____. After the payment of
15  Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at
16  Closing in "Good Funds" as defined by law.

17  **4. EARNEST MONEY:** Earnest Money shall be held in trust for the mutual benefit of the Parties by *[check one]:*
18  ☐ Seller's Brokerage; ☑ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee".
19  Initial Earnest Money of $ 2000 _____ shall be tendered to Escrowee on or before 5 day(s) after Date
20  of Acceptance. Additional Earnest Money of $ _____ shall be tendered by _____, 20 ___.

21  **5. FIXTURES AND PERSONAL PROPERTY AT NO ADDITIONAL COST:** All of the fixtures and included Personal
22  Property are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance,
23  unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing,
24  and well systems together with the following items of Personal Property at no additional cost by Bill of Sale at
25  Closing *[Check or enumerate applicable items]:*

26  ☐ Refrigerator            ☑ Central Air Conditioning    ☐ Central Humidifier           ☑ Light Fixtures, as they exist
27  ☐ Oven/Range/Stove        ☐ Window Air Conditioner(s)   ☐ Water Softener (owned)       ☑ Built-in or attached shelving
28  ☐ Microwave               ☐ Ceiling Fan(s)              ☐ Sump Pump(s)                 ☐ All Window Treatments & Hardware
29  ☐ Dishwasher              ☐ Intercom System             ☐ Electronic or Media Air Filter(s)  ☐ Existing Storms and Screens
30  ☐ Garbage Disposal        ☐ Backup Generator System     ☐ Central Vac & Equipment      ☐ Fireplace Screens/Doors/Grates
31  ☐ Trash Compactor         ☐ Satellite Dish              ☐ Security System(s) (owned)   ☐ Fireplace Gas Log(s)
32  ☐ Washer                  ☐ Outdoor Shed                ☐ Garage Door Opener(s)        ☐ Invisible Fence System, Collar & Box
33  ☐ Dryer                   ☑ Planted Vegetation              with all Transmitters      ☑ Smoke Detectors
34  ☐ Attached Gas Grill      ☐ Outdoor Play Set(s)         ☐ All Tacked Down Carpeting    ☑ Carbon Monoxide Detectors
35  Other Items Included at No Additional Cost: _____
36
37  Items Not Included: _____
38
39  Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
40  operating condition at Possession except: _____
41  A system or item shall be deemed to be in operating condition if it performs the function for which it is
42  intended, regardless of age, and does not constitute a threat to health or safety.
43  If Home Warranty will be provided, complete Optional Paragraph 34.

Buyer Initial ┌─DS─┐ **LR** └──────┘ Buyer Initial _____         Seller Initial _____ Seller Initial _____
Address: 1207 Lisle PL LISLE IL 60532 And Lot 10                                                          v6.1
Page 1 of 13

DocuSign Envelope ID: 10ADDBA7-FC52-46FE-9235-37484C7AC49D

44 6. CLOSING: Closing shall be on *1 SEPT 7*, 20 17 or at such time as mutually agreed by the
45 Parties in writing. Closing shall take place at the escrow office of the title company (or its issuing agent) that will
46 issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall be agreed mutually by the Parties.

47 7. POSSESSION: Unless otherwise provided in Paragraph 40, Seller shall deliver possession to Buyer at Closing.
48 Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
49 to the Real Estate to Buyer or to the office of the Seller's Brokerage.

50 8. MORTGAGE CONTINGENCY: If this transaction is NOT CONTINGENT ON FINANCING, Optional Paragraph 36 a) OR
51 Paragraph 36 b) MUST BE USED. If any portion of Paragraph 36 is used, the provisions of this Paragraph 8 are NOT APPLICABLE.
52 This Contract is contingent upon Buyer obtaining a *[check one]* ☑fixed; ☐adjustable; *[check one]* ☑conventional;
53 ☐FHA/VA (if FHA/VA is chosen, complete Paragraph 37); ☐ other _____ loan for *95* %
54 of the Purchase Price, plus private mortgage insurance (PMI), if required, with an interest rate (initial rate if an
55 adjustable rate mortgage used) not to exceed *4.50* % per annum, amortized over not less than *30* years.
56 Buyer shall pay loan origination fee and/or discount points not to exceed *0* % of the loan amount. Buyer
57 shall pay usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 35 if
58 closing cost credits apply).

59 Buyer shall make written loan application within five (5) Business Days after the Date of Acceptance; failure to
60 do so shall constitute an act of Default under this Contract. *[Complete both a) and b)]*:

61 a) Not later than _____, 20 ___, (if no date is inserted, the date shall be twenty-one (21) days after
62    the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
63    confirming that Buyer has provided to such lending institution an "Intent to Proceed" as that term is defined
64    in the rules of the Consumer Financial Protection Bureau and has paid all lender application and appraisal
65    fees. If Buyer is unable to provide such written evidence, Seller shall have the option of declaring this
66    Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
67    specified herein or any extension date agreed to by the Parties in writing.

68 b) Not later than *August 15*, 20 *17*, (if no date is inserted, the date shall be sixty (60) days after the
69    Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
70    confirming that Buyer has received a written mortgage commitment for the loan referred to above. If Buyer
71    is unable to provide such written evidence either Buyer or Seller shall have the option of declaring this
72    Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
73    specified herein or any extension date agreed to by the Parties in writing.

74 A Party causing delay in the loan approval process shall not have the right to terminate under either of the
75 preceding paragraphs. In the event neither Party elects to declare this Contract terminated as of the latter of
76 the dates specified above (as may be amended from time to time), then this Contract shall continue in full
77 force and effect without any loan contingencies.

78 Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
79 closing of Buyer's existing real estate. Buyer shall be deemed to have satisfied the financing conditions of this
80 paragraph if Buyer obtains a loan commitment in accordance with the terms of this paragraph even though the
81 loan is conditioned on the sale and/or closing of Buyer's existing real estate.

82 9. STATUTORY DISCLOSURES: If applicable, prior to signing this Contract, Buyer:
83 *[check one]* ☑has ☐has not received a completed Illinois Residential Real Property Disclosure;
84 *[check one]* ☑has ☐has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
85 *[check one]* ☑has ☐has not received a Lead-Based Paint Disclosure;
86 *[check one]* ☑has ☐has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions";

*Buyer Initial* **LR**   *Buyer Initial* _____        *Seller Initial* _____   *Seller Initial* _____
*Address:* 1207 Lisle PL, LISLE IL 60532 And Lot 10 _____
*Page 2 of 13*                                                                      *v6.1*

87    *[check one]* ☑has ☐has not received the Disclosure of Information on Radon Hazards.

88    **10. PRORATIONS:** Proratable items shall include without limitation, rents and deposits (if any) from tenants;
89    Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer; and
90    Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
91    Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
92    represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $_____
93    per _____ (and, if applicable Master/Umbrella Association fees are $ _____ per _____).
94    Seller agrees to pay prior to or at Closing any special assessments (by any association or governmental entity)
95    confirmed prior to the Date of Acceptance. Special Assessment Area or Special Service Area installments due
96    after the year of Closing shall not be proratable items and shall be paid by Buyer. The general Real Estate taxes
97    shall be prorated as of the date of Closing based on **105** % of the most recent ascertainable full year tax bill. All
98    prorations shall be final as of Closing, except as provided in Paragraph 22. If the amount of the most recent
99    ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior
100    deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the
101    appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of
102    this Paragraph shall survive the Closing.

103    **11. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
104    Parties, by Notice, may:
105    a) Approve this Contract; or
106    b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
107    c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
108      Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
109      modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
110      shall be null and void; or
111    d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
112      declare this Contract null and void and this Contract shall remain in full force and effect.
113    Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 11 c). If Notice is not
114    served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
115    Parties and this Contract shall remain in full force and effect.

116    **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense (unless
117    otherwise provided by governmental regulations) any or all of the following inspections of the Real Estate by
118    one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based
119    paint hazards or wood-destroying insect infestation.
120    a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute defects
121      and are not a part of this contingency. The fact that a functioning major component may be at the end of
122      its useful life shall not render such component defective for purposes of this paragraph. Buyer shall
123      indemnify Seller and hold Seller harmless from and against any loss or damage caused by the acts of
124      negligence of Buyer or any person performing any Inspection. The home inspection shall cover only the
125      major components of the Real Estate, including but not limited to central heating system(s), central cooling
126      system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors,
127      appliances and foundation. A major component shall be deemed to be in operating condition if it performs
128      the function for which it is intended, regardless of age, and does not constitute a threat to health or safety. If
129      radon mitigation is performed, Seller shall pay for any retest.

*Buyer Initial* **LR** *Buyer Initial* _____       *Seller Initial* _____ *Seller Initial* _____
*Address:* 1207 Lisle PL LISLE IL 60532 And Lot 10
*Page 3 of 13*                                                  *v6.1*

130 b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for which
131 Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection reports
132 within five (5) Business Days (ten (10) calendar days for a lead-based paint or lead-based paint hazard
133 inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of Acceptance
134 written agreement is not reached by the Parties with respect to resolution of all inspection issues, then either
135 Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be
136 null and void.

137 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
138 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
139 within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void. Said Notice
140 shall not include any portion of the inspection reports unless requested by Seller.

141 d) Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
142 waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain
143 in full force and effect.

144 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
145 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
146 Days after the Date of Acceptance. If Buyer is unable to obtain evidence of insurability and serves Notice
147 with proof of same to Seller within time specified, this Contract shall be null and void. If Notice is not
148 served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract
149 shall remain in full force and effect.

150 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
151 located in a special flood hazard area. If Notice of the option to declare contract null and void is not given to
152 Seller within ten (10) Business Days after the Date of Acceptance or by the time specified in Paragraph 8 b),
153 whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full
154 force and effect. Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property
155 Disclosure Act.

156 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
157 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
158 conflicting terms.

159 a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions
160 of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all
161 amendments; public and utility easements including any easements established by or implied from the
162 Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions
163 imposed by the Condominium Property Act; installments due after the date of Closing of general
164 assessments established pursuant to the Declaration/CCRs.

165 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all
166 special assessments confirmed prior to the Date of Acceptance.

167 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
168 the Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement
169 relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.

170 d) Seller shall, within five (5) Business Days from the Date of Acceptance, apply for those items of disclosure
171 upon sale as described in the Illinois Condominium Property Act; and provide same in a timely manner, but
172 no later than the time period provided for by law. This Contract is subject to the condition that Seller be able

Buyer Initial [LR] Buyer Initial _____                    Seller Initial _____ Seller Initial _____
Address: 1207 Liste PL LISLE IL 60532 And Lot 10
Page 4 of 13                                                                                        v6.1

DocuSign Envelope ID: 16ADDBA7-FC62-46FE-9235-37484A7AC490

173 to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to
174 purchase created by the Declaration/CCRs. In the event the Condominium Association requires the personal
175 appearance of Buyer or additional documentation, Buyer agrees to comply with same.

176 e) In the event the documents and information provided by Seller to Buyer disclose that the existing
177 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
178 conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
179 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
180 Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days after the
181 receipt of the documents and information required by this Paragraph, listing those deficiencies which are
182 unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have
183 waived this contingency, and this Contract shall remain in full force and effect.

184 f) Seller shall not be obligated to provide a condominium survey.

185 g) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

186 **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's Designated grantee good and
187 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
188 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller
189 (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject
190 only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they
191 do not interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and
192 payable at the time of Closing.

193 **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**

194 a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
195 closing inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required
196 by municipal ordinance shall be paid by the Party designated in such ordinance.

197 b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
198 Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

199 **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
200 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
201 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by
202 a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance,
203 subject only to items listed in Paragraph 16. The requirement to provide extended coverage shall not apply if the
204 Real Estate is vacant land. The commitment for title insurance furnished by Seller will be presumptive evidence
205 of good and merchantable title as therein shown, subject only to the exceptions therein stated. If the title
206 commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other
207 survey matters that are not acceptable to Buyer, then Seller shall have said exceptions, survey matters or
208 encroachments removed, or have the title insurer commit to either insure against loss or damage that may
209 result from such exceptions or survey matters or insure against any court-ordered removal of the
210 encroachments. If Seller fails to have such exceptions waived or insured over prior to Closing, Buyer may elect
211 to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite and
212 ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering the date of Closing, and
213 shall sign any other customary forms required for issuance of an ALTA Insurance Policy.

214 **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
215 condominium (see Paragraph 15) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-37484C7AC490

216 Survey that conforms to the current Minimum Standard of Practice for boundary surveys, is dated not more
217 than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to
218 practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of
219 improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set
220 monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked
221 or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's
222 seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a
223 boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

224 **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
225 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
226 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
227 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
228 condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
229 Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
230 damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois
231 shall be applicable to this Contract, except as modified by this paragraph.

232 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
233 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real
234 Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate,
235 fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and
236 included Personal Property are in substantially the same condition as of the Date of Acceptance, normal wear
237 and tear excepted.

238 **22. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
239 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
240 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
241 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes
242 shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after
243 proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's
244 obligation after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess
245 promptly upon demand.

246 **23. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
247 Seller represents that with respect to the Real Estate Seller has no knowledge of nor has Seller received any
248 written notice from any association or governmental entity regarding:
249 a)  zoning, building, fire or health code violations that have not been corrected;
250 b)  any pending rezoning;
251 c)  boundary line disputes;
252 d)  any pending condemnation or Eminent Domain proceeding;
253 e)  easements or claims of easements not shown on the public records;
254 f)  any hazardous waste on the Real Estate;
255 g)  any improvements to the Real Estate for which the required initial and final permits were not obtained;
256 h)  any improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment; or
257 i)  any improvements to the Real Estate which are eligible for the home improvement tax exemption.
258 Seller further represents that:

Buyer Initial __LR__   Buyer Initial _____     Seller Initial _____   Seller Initial _____
Address: 1287 Lisle PL LISLE IL 60532 And Lot 10
Page 6 of 13                                                                                          v6.1

DocuSign Envelope ID: 16ADDBA7-FC62-46FE-9235-37484A7AC490

259 *[Initials]* **LR** _____ _____ _____ There *[check one]* ☐ is ☑ is not a pending or unconfirmed special assessment
260 affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
261 _____ **LR** _____ _____ The Real Estate *[check one]* ☐ is ☑ is not located within a Special Assessment Area or
262 Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
263 All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
264 matters that require modification of the representations previously made in this Paragraph 23, Seller shall
265 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
266 terminate this Contract by Notice to Seller and this Contract shall be null and void.

267 **24.  BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
268 holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

269 **25.  FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
270 executing, negotiating, and finalizing this Contract, and delivery thereof by one of the following methods shall
271 be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be
272 produced by scanning an original, hand-signed document and transmitting same by facsimile. An acceptable
273 digital signature may be produced by use of a qualified, established electronic security procedure mutually
274 agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually
275 acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating
276 the digital signature and sending same by electronic mail.

277 **26.  DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
278 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
279 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
280 competent jurisdiction."
281 In the event either Party has declared the Contract null and void or the transaction has failed to close as
282 provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court
283 order, the Escrowee may elect to proceed as follows:

284 a)  Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
285     prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee
286     intends to disburse in the absence of any written objection. If no written objection is received by the date
287     indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice
288     to the Parties. If any Party objects in writing to the intended disbursement of Earnest Money then Earnest
289     Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a
290     court of competent jurisdiction.
291 b)  Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
292     resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds
293     deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable
294     attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to
295     reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify
296     Escrowee for additional costs and fees incurred in filing the Interpleader action.

297 **27. NOTICE:** Except as provided in Paragraph 32 c) 2) regarding the manner of service for "kick-out" Notices, all
298 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
299 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
300 a)  By personal delivery; or

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-37484A7AC490

301  b)  By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except
302      as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or

303  c)  By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
304      Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted
305      during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after
306      transmission; or

307  d)  By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
308      attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
309      transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective
310      date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may
311      opt out of future e-mail Notice by any form of Notice provided by this Contract; or

312  e)  By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
313      following deposit with the overnight delivery company.

314  **28. PERFORMANCE:** Time is of the essence of this Contract. In any action with respect to this Contract, the Parties
315  are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to
316  collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

317  **29. CHOICE OF LAW AND GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
318  Attorney Review and Professional Inspection paragraphs shall be governed by the laws of the State of Illinois and
319  are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

320  **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the Parties
321  and the following additional attachments, if any: _____
322  _____.

323                    **OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**

324  *[Initials]* _____ _____ _____  **31. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
325  consented to _____ (Licensee) acting as a Dual Agent in providing
326  brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the
327  transaction referred to in this Contract.

328  _____ _____ _____  **32. SALE OF BUYER'S REAL ESTATE:**
329  a)  **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
330      1)  Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
331      _____
332      Address                                   City                   State                   Zip
333      2)  Buyer *[check one]*☐ has ☐ has not entered into a contract to sell Buyer's real estate.
334          If Buyer has entered into a contract to sell Buyer's real estate, that contract:
335          a)  *[check one]*☐ is ☐ is not subject to a mortgage contingency.
336          b)  *[check one]*☐ is ☐ is not subject to a real estate sale contingency.
337          c)  *[check one]*☐ is ☐ is not subject to a real estate closing contingency.
338      3)  Buyer *[check one]*☐ has ☐ has not listed Buyer's real estate for sale with a licensed real estate broker and
339          in a local multiple listing service.
340      4)  If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing
341          service, Buyer *[check one]*:

*Buyer Initial* **LR** *Buyer Initial* _____                    *Seller Initial* _____   *Seller Initial* _____
*Address:* 1207 Lisle PL LISLE IL 60532 And Lot 10
_____ *v6.1*
*Page 8 of 13*

DocuSign Envelope ID: 16ADDBA7-FC62-46FE-9235-37484C7AC49D

342     a) ☐ Shall list real estate for sale with a licensed real estate broker who will place it in a local multiple
343     listing service within five (5) Business Days after Date of Acceptance.
344     *[For information only]* Broker: _____
345     Broker's Address: _____ Phone: _____
346     b) ☐ Does not intend to list said real estate for sale.

347 **b)**  **CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**

348    1)  This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that
349     is in full force and effect as of _____, 20_____. Such contract should provide for a closing
350     date not later than the Closing Date set forth in this Contract. If Notice is served on or before the date set
351     forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this
352     Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's
353     real estate is not served on or before the close of business on the date set forth in this subparagraph,
354     Buyer shall be deemed to have waived all contingencies contained in this Paragraph 32, and this
355     Contract shall remain in full force and effect. (If this paragraph is used, then the following paragraph must
356     be completed.)

357    2)  In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 32
358     b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real
359     estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of
360     Buyer's real estate on or before _____, 20_____. If Notice that Buyer has not closed the sale
361     of Buyer's real estate is served before the close of business on the next Business Day after the date set
362     forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described
363     in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this
364     Paragraph 32, and this Contract shall remain in full force and effect.

365    3)  If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
366     Paragraph 32 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 32 b) 1)), Buyer shall,
367     within three (3) Business Days of such termination, notify Seller of said termination. Unless Buyer, as part
368     of said Notice, waives all contingencies in Paragraph 32 and complies with Paragraph 32 d), this Contract
369     shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served
370     within the time specified, Buyer shall be in default under the terms of this Contract.

371 **c)**  **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
372  Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:

373    1)  If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in
374     Paragraph 32 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have _____
375     hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 32 b), subject to
376     Paragraph 32 d).

377    2)  Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be served
378     on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such 'kick-out' Notice should
379     be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
380     shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
381     Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
382     a) By personal delivery effective at the time and date of personal delivery; or
383     b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
384     effective at 10:00 A.M. on the morning of the second day following deposit of Notice in the U.S. Mail; or

385         c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4:00 P.M.
386             Chicago time on the next delivery day following deposit with the overnight delivery company,
387             whichever first occurs.

388       3) If Buyer complies with the provisions of Paragraph 32 d) then this Contract shall remain in full force and effect.

389       4) If the contingencies set forth in Paragraph 32 b) are NOT waived in writing, within said time period by
390         Buyer, this Contract shall be null and void.

391       5) Except as provided in Paragraph 32 c) 2) above, all Notices shall be made in the manner provided by
392         Paragraph 27 of this Contract.

393       6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or
394         representative.

395 d) **WAIVER OF PARAGRAPH 32 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
396    Paragraph 32 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
397    money in the amount of $_____ in the form of a cashier's or certified check within the time
398    specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be
399    deemed ineffective and this Contract shall be null and void.

400 e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained
401    in Paragraph 32 at any time, and Buyer agrees to cooperate in providing relevant information.

402    _____ **33. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
403 into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
404 _____, 20 ____. In the event the prior contract is not cancelled within the time specified, this
405 Contract shall be null and void. Seller's notice to the purchaser under the prior contract should not be served
406 until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
407 satisfied or waived.

408    _____ **34. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost
409 of $_____. Evidence of a fully pre-paid policy shall be delivered at Closing.

410    _____ **35. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the HUD-1
411 Settlement Statement or Closing Disclosure, and if not, such lesser amount as the lender permits, Seller agrees to
412 credit $_____ to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

413    _____ **36. TRANSACTIONS NOT CONTINGENT ON FINANCING: IF EITHER OF THE FOLLOWING**
414 **ALTERNATIVE OPTIONS IS SELECTED, THE PROVISIONS OF THE MORTGAGE CONTINGENCY PARAGRAPH 8**
415 **SHALL NOT APPLY [CHOOSE ONLY ONE]:**

416 a) _____ Transaction With No Mortgage (All Cash): If this selection is made, Buyer will pay at closing,
417    in the form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the
418    amount of the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the
419    Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees
420    to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such
421    financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
422    availability of sufficient funds to close. Buyer understands and agrees that, so long as Seller has fully complied
423    with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether
424    intentional or not, that prevents Buyer from satisfying the balance due from Buyer at closing, shall constitute a
425    material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally.
426    Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
427    closing of Buyer's existing real estate.

428  b) _____ _____ _____ Transaction, Mortgage Allowed: If this selection is made, Buyer will pay at closing, in the
429  form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the amount of
430  the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the Date of Offer,
431  that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees to verify the
432  above representation upon the reasonable request of Seller and to authorize the disclosure of such financial
433  information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
434  availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and
435  promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but
436  not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the balance due (plus or
437  minus prorations) to close this transaction. Such cooperation shall include the performance in a timely manner
438  of all of Seller's pre-closing obligations under this Contract. This Contract shall NOT be contingent upon
439  Buyer obtaining financing. Buyer understands and agrees that, so long as Seller has fully complied with
440  Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional
441  or not, that prevents Buyer from satisfying the balance due from Buyer at Closing shall constitute a material
442  breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee. Unless otherwise
443  provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or closing of Buyer's
444  existing real estate.

445  _____ _____ _____ 37. VA OR FHA FINANCING: If Buyer is seeking VA or FHA financing, required FHA or VA
446  amendments and disclosures shall be attached to this Contract. If VA, the Funding Fee, or if FHA, the Mortgage
447  Insurance Premium (MIP) shall be paid by Buyer and [check one]☐shall ☐shall not be added to the mortgage loan amount.

448  _____ _____ _____ 38. WELL OR SANITARY SYSTEM INSPECTIONS: Seller shall obtain at Seller's expense a well
449  water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria
450  and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental
451  Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to
452  Closing, stating that the well and water supply and the private sanitary system are in operating condition with no
453  defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that
454  if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the
455  Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by
456  either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report
457  recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a
458  mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to
459  Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to
460  Closing.

461  _____ _____ _____ 39. WOOD DESTROYING INFESTATION: Notwithstanding the provisions of Paragraph 12,
462  within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written
463  report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the
464  appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of
465  active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the
466  report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business
467  Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

468  _____ _____ _____ 40. POST CLOSING POSSESSION: Possession shall be delivered no later than 11:59 P.M. on the
469  date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible for all
470  utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall



Buyer Initial [LR] Buyer Initial _____

Address: 1207 Lisle PL LISLE IL 60532 And Lot 10

Seller Initial _____ Seller Initial _____

_____ v6.1

Page 11 of 13

471   deposit in escrow at Closing with _____, *[check one]* ☐ one percent (1%)
472   of the Purchase Price or ☐ the sum of $_____ to be paid by Escrowee as follows:

473   a)  The sum of $_____ per day for use and occupancy from and including the day after Closing to
474       and including the day of delivery of Possession, if on or before the Possession Date;

475   b)  The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
476       the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

477   c)  The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have been
478       satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
479       deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

480   _____ 41. "AS IS" CONDITION: This Contract is for the sale and purchase of the Real Estate in its "As
481   Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
482   respect to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those
483   known defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller
484   shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold
485   Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
486   performing any inspection. In the event the inspection reveals that the condition of the Real Estate is
487   unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance,
488   this Contract shall be null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and
489   Buyer shall not be obligated to send the inspection report to Seller absent Seller's written request for same.
490   Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate
491   this Contract under this paragraph and this Contract shall remain in full force and effect. Buyer acknowledges
492   that the provisions of Paragraph 12 and the warranty provisions of Paragraph 5 do not apply to this Contract.

493   _____ 42. SPECIFIED PARTY APPROVAL: This Contract is contingent upon the approval of the Real
494   Estate by _____
495   Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's Specified
496   Party does not approve of the Real Estate and Notice is given to Seller within the time specified, this Contract shall
497   be null and void. If Notice is not served within the time specified, this provision shall be deemed waived by the
498   Parties and this Contract shall remain in full force and effect.

499   _____ 43. INTEREST BEARING ACCOUNT: Earnest money (with a completed W-9 and other
500   required forms), shall be held in a federally insured interest bearing account at a financial institution designated
501   by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to Buyer. Buyer
502   shall be responsible for any administrative fee (not to exceed $100) charged for setting up the account. In
503   anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10) Business Days
504   prior to the anticipated Closing date.

505   _____ 44. MISCELLANEOUS PROVISIONS: Buyer's and Seller's obligations are contingent upon the
506   Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and
507   with such additional terms as either Party may deem necessary, providing for one or more of the following *[check applicable boxes]*:

508   ☐ Articles of Agreement for Deed    ☐ Assumption of Seller's Mortgage    ☐ Commercial/Investment
509      or Purchase Money Mortgage    ☐ Cooperative Apartment    ☐ New Construction
510   ☐ Short Sale    ☐ Tax-Deferred Exchange    ☐ Vacant Land

Buyer Initial ┌─ DS ┐ **LR** _____ Buyer Initial _____    Seller Initial _____   Seller Initial _____
Address: 1207 Lisle PL LISLE IL 60532 And Lot 10
Page 12 of 13                                v6.1

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-3748AC7AC49D

| 511 | THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS. |
| 512 | THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL |
| 513 | MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1. |

514   **7/17/2017**

| | | |
|---|---|---|
| 515 | Date of Offer | DATE OF ACCEPTANCE |
| 516 | **Lilian Riedy** | |
| 517 | Buyer Signature | Seller Signature |
| 518 | | |
| 519 | Buyer Signature | Seller Signature |
| 520 | **Lilian Riedy** | |
| 521 | Print Buyer(s) Name(s) [Required] | Print Seller(s) Name(s) [Required] |
| 522 | **4310 Nutmeg Lane  #133** | |
| 523 | Address | Address |
| 524 | **Lisle               IL       60532** | |
| 525 | City                State        Zip | City                State        Zip |
| 526 | | |
| 527 | Phone              E-mail | Phone              E-mail |

528                          **FOR INFORMATION ONLY**

| | | | | | | |
|---|---|---|---|---|---|---|
| 529 | **Baird & Warner**    25003      477010812 | **@properties**          70304 | | | | |
| 530 | Buyer's Brokerage        MLS #       State License # | Seller's Brokerage      MLS #      State License # | | | | |
| 531 | **543 Pennsylvania Avenue   Glen Ellyn    60137** | **1875 N  Damen Ave    Chicago    60647** | | | | |
| 532 | Address            City        Zip | Address          City      Zip | | | | |
| 533 | **Corey Schraw    226197       475123305** | **Dina DiSera        705452      475147476** | | | | |
| 534 | Buyer's Designated Agent   MLS #    State License # | Seller's Designated Agent   MLS #    State License # | | | | |
| 535 | **(630) 561-8454** | **(815) 405-6303      (773) 432-0050** | | | | |
| 536 | Phone                Fax | Phone                  Fax | | | | |
| 537 | **Corey.Schraw@bairdwarner.com** | **dina.disera@gmail.com** | | | | |
| 538 | E-mail | E-mail | | | | |
| 539 | **Alex Ranjha         ranjha@ranjhalaw.com** | | | | | |
| 540 | Buyer's Attorney              E-mail | Seller's Attorney              E-mail | | | | |
| 541 | | |
| 542 | Address        City        State   Zip | Address          City      State   Zip | | | | |
| 543 | **630 277-9368** | | | | | |
| 544 | Phone                Fax | Phone                  Fax | | | | |
| 545 | **Cherry Creek Mortgage** | | | | | |
| 546 | Mortgage Company          Phone | Homeowner's/Condo Association (if any)  Phone | | | | |
| 547 | **Ron Bacza              630-788-9797** | | | | | |
| 548 | Loan Officer              Phone/Fax | Management Co./Other Contact          Phone | | | | |
| 549 | **rbacza@ccmclending.com** | | | | | |
| 550 | Loan Officer E-mail | Management Co./Other Contact E-mail | | | | |

| 551 | Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented. |
| 552 | Seller rejection: This offer was presented to Seller on _____, 20___ at __:__ A.M./P.M. and rejected on |
| 553 | ____, 20___ at __:__ A.M./P.M. _____ [Seller Initials] |

| 554 | © 2015, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official forms available at |
| 555 | irelawyers.org (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, September 2015: Illinois Real Estate Lawyers Association • DuPage County Bar Association • |
| 556 | McHenry County Bar Association • Northwest Suburban Bar Association • Will County Bar Association • Belvidere Board of REALTORS® • Chicago Association of REALTORS® • Heartland REALTOR® |
| 557 | Organization • Hometown Association of REALTORS® • Illini Valley Association of REALTORS® • Kankakee-Iroquois-Ford County Association of REALTORS® • Mainstreet Organization of |
| 558 | REALTORS® • North Shore-Barrington Association of REALTORS® • Oak Park Area Association of REALTORS® • REALTOR® Association of the Fox Valley, Inc. • Three Rivers Association of |
| 559 | REALTORS® |

Buyer Initial  **LR**  Buyer Initial _____          Seller Initial _____   Seller Initial _____

Address: **1207 Lisle PL LISLE IL 60532 And Lot 10** _____   v6.1

Page 13 of 13

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-37484C7AC490

DocuSign Envelope ID: 6E93544C-D351-4F35-9883-F008FA1CED19



### ILLINOIS ASSOCIATION OF REALTORS®
# DISCLOSURE OF INFORMATION AND ACKNOWLEDGEMENT
## LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS



**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

Property Address: 1207 Lisle Place, Lisle, IL 60532

**Seller's Disclosure (Initial)**

___ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

___ (b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (Initial)**

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead In Your Home.*

_____ (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (Initial)**

_____ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

Seller _Lawrence Premelius_ Date _5/15/2017_    Purchaser _Lilian Riedy_ Date _7/12/2017 | 12:22 PM_

Seller _____ Date _____    Purchaser _____ Date _____

Agent _Nina DiSera_ Date _5/12/2017_    Agent _____ Date _7/11/2017_

(This disclosure form should be attached to the Contract to Purchase)

FORM 420 (8/14/13) COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS®

1/1

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-374B4C7AC490

DocuSign Envelope ID: 6E93644C-D351-4F35-9863-F008FA1CED19



# ILLINOIS ASSOCIATION OF REALTORS®
# DISCLOSURE OF INFORMATION ON RADON HAZARDS
## (For Residential Real Property Sales or Purchases)



**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a)  Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b)  Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.

*LE* (c)  Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.

*LE* (d)  Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

_DS_ (e)  Purchaser has received copies of all information listed above.

**LR** (f)  Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial IF APPLICABLE)**

_DD_ (g)  Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller | *Lawrence Fromelius* | Date | 5/15/2017 |
| Seller | | Date | |
| Purchaser | Lilian Riedy | Date | 7/12/2017 \| 12:22 PM CDT |
| Purchaser | | Date | |
| Agent | *Nira DiSera* | Date | 5/12/2017 |
| Agent | | Date | 7/11/2017 |

Property Address:  1207 Lisle Place

City, State, Zip Code:  Lisle, Il 60532

FORM 422 (8/14/13) COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS®                    1/1

DocuSign Envelope ID: 10ADDBA7-FC62-48FE-9235-3748AC7AC491

DocuSign Envelope ID: 6E93544C-D351-4F35-8893-F006FA1CED18





**Illinois REALTORS®**
**RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT**
**(765 ILCS 77/35)**

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES' RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW, SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY THE SELLER CREATES LEGAL OBLIGATIONS ON THE SELLER; THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: **1207 Lisle Place**

City, State & Zip Code: **Lisle, Il 60532**

Seller's Name: **Lawrence Fromelius**

This Report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of **May 12** _____, **2017**, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form, a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect), or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| | YES | NO | N/A | |
|---|---|---|---|---|
| 1. | | ✓ | | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | | ✓ | | I am aware of flooding or recurring leakage problems in the crawl space or basement. |
| 3. | | ✓ | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | | ✓ | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | ✓ | | I am aware of leaks or material defects in the roof, ceilings, or chimney. |
| 6. | | ✓ | | I am aware of material defects in the walls, windows, doors, or floors. |
| 7. | | ✓ | | I am aware of material defects in the electrical system. |
| 8. | | ✓ | | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | ✓ | | I am aware of material defects in the well or well equipment. |
| 10. | | ✓ | | I am aware of unsafe conditions in the drinking water. |
| 11. | | ✓ | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | ✓ | | I am aware of material defects in the fireplace or wood burning stove. |
| 13. | | ✓ | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | ✓ | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | ✓ | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | ✓ | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | ✓ | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | ✓ | | I am aware of underground fuel storage tanks on the property. |
| 21. | | ✓ | | I am aware of boundary or lot line disputes. |
| 22. | | ✓ | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 23. | | ✓ | | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

FORM 108 (7/28/16) COPYRIGHT ILLINOIS REALTORS® Page 1 of 4

DocuSign Envelope ID: 10ADDBA7-FC62-46FE-9235-37484C7AC49D

DocuSign Envelope ID: 6E93544C-D351-4F35-9883-F008FA1CED19

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary: _____

_____

_____

_____

Check here if additional pages used: ☐ ☐ _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _Lawrence Promelius_____     Date: May 12, 2017

Seller: _____     Date: _____

THE PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. THE PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _Lilian Riedy_____ Date: 7/12/2017 | 12:22 PM CDT  Time: _____

Prospective Buyer: _____  Date: _____  Time: _____

A COPY OF ARTICLE 2 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT IS AFFIXED HERETO AND SHOULD BE REVIEWED BY PROSPECTIVE BUYER.

DocuSign Envelope ID: 10ADDBA7-FC62-48FE-9235-3748EAC7AC89

DocuSign Envelope ID: 0E93544C-D351-4F35-9883-F008FA1CED19

## RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
### ARTICLE 2: DISCLOSURES
#### 765 ILCS 77/5 et seq.

Section 5. Definitions. As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section: "Residential real property" means real property improved with not less than one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit. The term includes a manufactured home as defined in subdivision (53) of Section 9102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

Section 10. Applicability. Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

Section 15. Applicability; Exceptions. The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgment, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgment or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

Section 20. Disclosure Report; Completion; Time of Delivery. A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

Section 25. Liability of seller.

(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

Section 30. Disclosure supplement. If, prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

Section 35. Disclosure report form. . . . [omitted]

Section 40. Material defect. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

Section 45. Effect of Act on Other Statutes or Common Law. This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

Section 50. Disclosure Report; Method of Delivery. Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

(1) personal or facsimile delivery to the prospective buyer;

(2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement; or

(3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

FORM 108 (7/26/16) COPYRIGHT ILLINOIS REALTORS® Page 3 of 4

DocuSign Envelope ID: 16ADBBA7-FC62-46FE-9235-37484C7AC49D

DocuSign Envelope ID: 6E93544C-D351-4F35-9B83-F005FA1CED19

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

Section 55. Violations and damages. If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

Section 60. Limitation of Action. No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

Section 65. Disclosure Report Form; Contents; Copy of Act. A copy of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Date provided to Buyer: _____

Seller: _____

DocuSign Envelope ID: 10ADBBA7-FC62-46FE-9235-3748AC7AC49D
DocuSign Envelope ID: D2231FCF-0FE5-4945-8C9D-31994BB5298D



**CHERRY CREEK**
MORTGAGE COMPANY

July 11, 2017

Lilian Riedy,

Congratulations! We have reviewed your application for a residential mortgage and based on your credit and current employment information you have been pre-qualified for an FHA loan to purchase 1207 Lisle Place and lot #10 in Lisle, IL.

Please allow 30-45 days for closing after acceptance of the contract from all parties.

Final Approval and funding is conditional upon:

- Must maintain appropriate funds to close. Cashier's check from source of VOD.
- Cherry Creek Mortgage to perform VOR or VOM if needed.
- Buyer's credit and income to remain the same. (income and credit have been reviewed)
- Fully executed sales contract with ALL disclosures.
- Clear Survey and Title
- Attorney 5-day review if applicable.
- Must be approved by HUD for funding
- Final underwriting review
- Applicable insurance paid 12 months in advance 5 days prior to close.
- Verification lender will be in first lien position.
- Debt to income not to exceed 45%
- Appraisal completed by Cherry Creek approved vendor
- Highest and Best use to be determined as residential

This approval is valid for 120 days from the date of issuance. Please notify Cherry Creek Mortgage of any changes to your borrower profile promptly, failure to do so may effect your closing schedule.

Sincerely,

Ron Bacza

Ron Bacza

Branch Manager
Cherry Creek Mortgage Company
6440 Main Street Ste 320
Woodridge, IL 60517
(630) 352-3041 office
(630) 788-9797 cell
rbacza@ccmclending.com
NMLS Mortgage Loan Originator #218090

An Illinois Mortgage Licensee





## Certificate Of Completion

Envelope Id: ██████████████████████          Status: Completed
Subject: Please DocuSign: Riedy.pdf
Source Envelope:
Document Pages: 20                    Signatures: 4          Envelope Originator:
Supplemental Document Pages: 0       Initials: 16           Corey Schraw
Certificate Pages: 4
AutoNav: Enabled                     Payments: 0            120 S LaSalle St Ste 2000
EnvelopeId Stamping: Enabled                                Chicago, IL  60603
Time Zone: (UTC-06:00) Central Time (US &                   corey.schraw@bairdwarner.com
Canada)                                                     IP Address: ██████████

## Record Tracking

Status: Original                     Holder: Corey Schraw              Location: DocuSign
        7/12/2017 9:37:54 AM                 corey.schraw@bairdwarner.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Lilian Riedy<br>██████@hotmail.com<br>Security Level: Email, Account Authentication (None) | Lilian Riedy<br>—DocuSigned by:—<br>—7D107836E88B456...—<br><br>Using IP Address ████████ | Sent: 7/12/2017 9:49:43 AM<br>Viewed: 7/12/2017 10:08:23 AM<br>Signed: 7/12/2017 12:22:08 PM |

Electronic Record and Signature Disclosure:
   Accepted: 7/12/2017 10:08:23 AM
   ID: ████████████████████

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/12/2017 9:49:43 AM |
| Certified Delivered | Security Checked | 7/12/2017 10:08:24 AM |
| Signing Complete | Security Checked | 7/12/2017 12:22:08 PM |
| Completed | Security Checked | 7/12/2017 12:22:08 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 12/5/2013 2:47:07 PM
Parties agreed to: Lilian Riedy

## CONSUMER DISCLOSURE

From time to time, Baird & Warner (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Baird & Warner:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mark.steward@bairdwarner.com
To contact us by paper mail, please send correspondence to:
Baird & Warner
120 S LaSalle St #2000
Chicago, IL 60603

**To advise Baird & Warner of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at mark.steward@bairdwarner.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Baird & Warner**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to mark.steward@bairdwarner.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.
**To withdraw your consent with Baird & Warner**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

> ii. send us an e-mail to mark.steward@bairdwarner.com and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |

| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Baird & Warner as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Baird & Warner during the course of my relationship with you.